## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RICHARD WALTER, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 4:18-cv-00785 |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| KMG CHEMICALS, INC., CHRISTOPHER T. FRASER, KAREN A. TWITCHELL, GERALD G. ERMENTROUT, FRED C. LEONARD, III, GEORGE W. GILMAN, JOHN C. HUNTER, III, ROBERT HARRER and MARGARET C. MONTANA, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Richard Walter ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of KMG Chemicals, Inc. ("KMG" or the "Company") against the Company and the members of the Company's board of trustees (collectively, the "Board" or "Individual Defendants," and, together with KMG, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between KMG and Cabot Microelectronics Corporation ("Cabot").

2.      On August 14, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which each share of KMG common stock will be exchanged for $55.65 in cash and 0.2 shares of Cabot common stock (the "Merger Consideration").

3.      On September 12, 2018, in order to convince KMG shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the S-4 false and/or misleading.

5.      In particular, the S-4 contains materially incomplete and misleading information concerning the Company's financial projections, which were relied upon by the Board in recommending shareholders vote in favor of the Proposed Merger and utilized by the Company's financial advisor, KeyBanc Capital Markets Inc. ("KeyBanc"), in rendering its fairness opinion.

6.      It is imperative that the material information that has been omitted from the S-4 is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for contraventions of (i) Rule 14a-9, and (ii) Regulation G, 17 C.F.R. § 244.100, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate

the Proposed Merger unless, and until, the material information discussed below is disclosed to KMG shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; and (ii) KMG is incorporated and maintains its principal place of business in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a KMG shareholder.

12.     Defendant KMG is incorporated in Texas and maintains its principal executive offices at 300 Throckmorton Street, Fort Worth, Texas 76102.  The Company trades on the New York Stock Exchange under the ticker symbol: "KMG".

13.     Individual Defendant Christopher T. Fraser has served as a director of the Company since 2008, as Chairman of the Board since 2012, and President and Chief Executive Officer of the Company since 2013.

14.     Individual Defendant Karen A. Twitchell has served as a director of the Company since 2010.

15.     Individual Defendant Gerald G. Ermentrout has served as a director of the Company since 2008.

16.     Individual Defendant Fred C. Leonard, III has served as a director of the Company since 1996.

17.     Individual Defendant George W. Gilman has served as a director of the Company since 1996.

18.     Individual Defendant John C. Hunter, III has served as a director of the Company since 2011.

19.     Individual Defendant Robert Harrer has served as a director of the Company since 2015.

20.     Individual Defendant Margaret C. Montana has served as a director of the Company since 2017.

21.     The Individual Defendants and KMG may collectively be referred to as "Defendants."  Each of the Individual Defendants herein is sued individually as well as in his or her capacity as an officer and/or trustee of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of KMG (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of September 11, 2018, there were approximately 16,252,769 shares of KMG common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of KMG will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without a presentation and reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

iii)      whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)      whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

24.     KMG is a chemical company that formulates, manufactures, and distributes specialty chemicals to industries such as electronics, industrial wood preservation, and industrial lubrication.

25.     On August 15, 2018, the Company and Cabot issued a press release announcing the Proposed Merger, which states in pertinent part:

AURORA, Ill. and FORT WORTH, Tx.—August 15, 2018—Cabot Microelectronics Corporation (Nasdaq: CCMP), the world's leading supplier of chemical mechanical planarization (CMP) polishing slurries and second largest CMP pads supplier to the semiconductor industry, and KMG Chemicals, Inc. (NYSE: KMG), a global provider of specialty chemicals and performance materials, have entered into a definitive agreement under which Cabot Microelectronics will acquire KMG in a cash and stock transaction with a total enterprise value of approximately $1.6 billion. Under the terms of the agreement, KMG shareholders will be entitled to receive, per KMG share, $55.65 in cash and 0.2000 of a share of Cabot Microelectronics common stock, which represents an implied per share value of $79.50 based on the volume weighted average closing price of Cabot Microelectronics common stock over the 20-day trading period ended on August 13, 2018. The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close near the end of calendar year 2018.

The combined company is expected to have annual revenues of approximately $1 billion and approximately $320 million in EBITDA, including synergies, extending and strengthening Cabot Microelectronics' position as one of the leading suppliers of consumable materials to the semiconductor industry. Additionally, the combined company will be a leading global provider of performance products and services for improving pipeline operations and optimizing throughput.

"We are excited about the combination of two world-class organizations with dedicated and talented employees that provide innovative, high quality solutions to solve our customers' most demanding challenges," said David Li, President and CEO of Cabot Microelectronics. "KMG's industry-leading electronic materials business is highly complementary to our CMP product portfolio, while its performance materials business broadens our product offerings into the fast-growing industry for pipeline performance products and services. We welcome KMG's employees to our team and look forward to our future together as one company."

Chris Fraser, KMG Chairman and CEO, said, "This is an outstanding combination, bringing together two leading companies that will benefit from increased size, scale

and geographic reach. For KMG shareholders, this transaction creates significant and immediate value while also providing participation in the future growth of the combined company. Thanks to the dedication and hard work of KMG employees around the world, KMG has achieved significant progress over the past several years, and I am confident that Cabot Microelectronics will continue to build on this success to further enhance value for our shareholders."

**Transaction Highlights**

The purchase price represents a total enterprise value for KMG of approximately $1.6 billion, inclusive of KMG's net debt, or approximately 10.9x KMG's estimated FY18 adjusted EBITDA post $25 million of estimated annual cost synergies.

Under the terms of the transaction, KMG shareholders will receive a combination of $55.65 in cash and 0.2000 shares of Cabot Microelectronics common stock per share of KMG common stock.

The transaction is expected to be significantly accretive to Cabot Microelectronics' free cash flow and accretive to adjusted earnings per share in year one, excluding any acquisition and integration related costs. Cabot Microelectronics expects to achieve $25 million of annual run-rate cost synergies within the first two years after closing the transaction.

The transaction is subject to the satisfaction of customary closing conditions, including HSR clearance and approval by KMG shareholders. Cabot Microelectronics expects to finance the cash portion of the transaction consideration through a combination of existing cash and additional debt supported by commitments from its key lenders.

After the close of the transaction, it is intended that Mr. Fraser becomes an advisor to Cabot Microelectronics during the integration. His extensive experience across the electronic chemicals and performance materials industries is expected to benefit the combined company with its integration efforts, customer and supplier relationships, and revenue expansion.

26.     The Merger Consideration appears inadequate in light of the Company's current financial health. Indeed, the Company has reported significant net income growth since 2015 and significant EBITDA growth since 2014. Moreover, the Company has reported triple-digit and double-digit free cash flow growth for the past two fiscal years, respectively.

27.     In sum, it appears that that the Merger Consideration fails to adequately compensate the Company's shareholders in exchange for the assets on the Company's balance sheet. It is

imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**The Materially Incomplete and Misleading S-4**

28.     On September 12, 2018, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Merger.  The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the S-4 misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

29.     A company's financial projections are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the financial forecasts were relied on to approve the Merger Agreement and recommend the Proposed Merger to shareholders.  The S-4 discloses that the financial projections above were prepared by the Company's management and were "reviewed and considered" by the KMG Board.  S-4 at 56.

30.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers

and acquisitions.  In regards to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

31.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  *Id.*

32.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*
>
> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

33.     As discussed further below, the financial projections here do not provide KMG's shareholders with a materially complete understanding of the assumptions and key factors, which shareholders would find material since the Board's recommendation that shareholders vote in favor of the Proposed Merger was based, in part, on the following:

- The KMG board's belief, taking into account the perspectives provided by KBCM and KMG's senior management, and after considering reasonable alternatives including remaining independent and the results of the strategic alternatives review conducted by KBCM, that the merger with Cabot Microelectronics and the merger consideration was the best value reasonably available to KMG and its shareholders;

- The KMG board's understanding of and KMG senior management's review of overall market conditions, including the current, historical and potential future trading prices for KMG common stock and Cabot Microelectronics common stock, and the KMG board's determination that, in light of these factors, the timing of the potential transaction was favorable to KMG and KMG's shareholders[.]

S-4 at 53.

### The Financial Projections are Materially Incomplete

34.     The S-4 discloses certain financial projections for the Company on pages 56-58. However, the S-4 fails to provide material information concerning the projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger.  S-4 at 56.

35.     Specifically, the S-4 provides values for the non-GAAP measure, Adjusted EBITDA, but fails to provide line items or reconciliation for this metric and only discloses the Company's projected capital expenditures ("CapEx").  S-4 at 56.

36.     The S-4 defines Adjusted EBITDA as "net income, excluding interest expense, net, provision for income taxes, depreciation and amortization, loss on extinguishment of debt, derivative fair value gain, acquisition and integration expenses, corporate relocation expense and

restructuring charges." S-4 at 56. Nevertheless, the S-4 does not provide the values of the line items nor a reconciliation to its most comparable GAAP equivalent. S-4 at 56.

37.     Further, the S-4 discloses that the Company's financial advisor, KeyBanc, "performed a discounted cash flow analysis on KMG to calculate the estimated present value of the standalone, unlevered, after-tax FCF that KMG could generate during KMG's fiscal years 2019 through 2023 based on the KMG prospective financial information and the extrapolated Cabot Microelectronics prospective financial information." S-4 at 64. Nevertheless, the S-4 does not disclose the projections of the Company's standalone, unlevered after-tax FCF ("UFCF"), or the line items used in its calculation, other than CapEx. *Id.*

38.     Moreover, the S-4 discloses that KeyBanc "defined free cash flow ('FCF') for any applicable period as operating earnings before interest, taxes, depreciation and amortization ('EBITDA') for such period minus capital expenditures ('CapEx') for such period." S-4 at 60.

39.     Notably, the S-4 does not disclose the Company's EBITDA projections and only Adjusted EBITDA as discussed above. As such, shareholders are unable to calculate the Company's UFCF projections despite being able to do so for Cabot. S-4 at 57.

40.     Moreover, without the relevant line items, shareholders are unable to make adjustments to the Company's projections in order to better compare the Company's future prospects with Cabot's future prospects.

41.     In the event that the Company's UFCF projections are based on Adjusted EBITDA, shareholders are being misled to believe that the UFCF for each respective company are comparable. At a minimum, clarification is required to cure the misleading disclosures surrounding the UFCF projections.

42.     As a result of the Company's incomplete disclosures surrounding the calculation of UFCF by KeyBanc, the S-4 is materially misleading as shareholders are unable to compare the financial analyses of each respective company.

43.     As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

### The Financial Projections Violate Regulation G

44.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. §244.101(a)(1).

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002), *available at* https://www.sec.gov/rules/final/33-8176.htm (last visited September 19, 2018).

[4]     *Id.*

45.     Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as KMG included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.   Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

46.     Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the S-4 into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

---

[5]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:  The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited September 19, 2018).

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted) (last visited September 19, 2018).

***The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9***

47.     In addition to the S-4's violation of Regulation G, the lack of reconciliation, or at the very least the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

48.     Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading.   Indeed, Defendants acknowledge the misleading nature of non-GAAP projections, as KMG shareholders are cautioned that "Adjusted EBITDA is a non-U.S. GAAP financial measure and should not be considered as an alternative to operating income or net income as a measure of operating performance or cash flows or as a measure of liquidity."  S-4 at 56.

49.     As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 65-66, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

50.     Additionally, the S-4 must disclose the financial projections for UFCF.  Without this information, shareholders are being misled as a result of the incomplete and insufficient summary of KeyBanc's financial analyses.   Further, shareholders are unable to compare the Company with Cabot, and thus, are unable to determine whether the stock portion of the Merger Consideration is in fact adequate.

51.     In sum, the S-4 independently violates: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.    As the S-4

independently contravenes the SEC rules and regulations, Defendants have violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Merger from KMG shareholders.

52.     Absent disclosure of the foregoing material information prior to the special shareholder meeting, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any S-4 or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

55.     As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other

clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

56.     The failure to reconcile the numerous non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in S-4 communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9.

59.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*."  17 C.F.R. § 244.100(b) (emphasis added).

60.     Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

61.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

62.     The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

63.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

64.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4.  The preparation of a S-4 statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

65.     KMG is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

66.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

67.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

68.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69.     The Individual Defendants acted as controlling persons of KMG within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of KMG, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

70.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.   They were thus directly involved in preparing the S-4.

72.     In addition, as described herein and set forth at length in the S-4, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

73.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

75.     Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholders vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  September 24, 2018

Respectfully Submitted,

**LOCAL COUNSEL**

By: */s/ Balon B. Bradley*
**LAW OFFICES OF BALON B. BRADLEY**
Balon B. Bradley
SBN # 02821700
11910 Greenville Avenue, Ste. 220
Dallas, TX  75243
(972) 991-1582

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330

*Counsel for Plaintiff Richard Walter*

Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff Richard Walter*